# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Submitted April 26, 2024          Decided August 2, 2024

No. 23-5089

SAVE JOBS USA,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
OFFICE OF GENERAL COUNSEL, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00615)

*John M. Miano* and *Christopher Hajec* were on the briefs for appellant.

*Carl E. Goldfarb* and *Megan Nyman* were on the brief for appellees Immigration Voice and Anujkumar Dhamija.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General, U.S. Department of Justice, *Glenn M. Girdharry*, Assistant Director, and *Alessandra Faso*, Trial Attorney, were on the brief for appellee United States Department of Homeland Security. *Joshua S. Press*, Attorney, entered an appearance.

2

*Leslie K. Dellon* and *Jennifer R. Coberly* were on the brief for *amici curiae* American Immigration Council and American Immigration Lawyers Association in support of appellees.

Before: SRINIVASAN, *Chief Judge*, WILKINS and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: The Department of Homeland Security issued a rule that allows certain visa holders to work in the United States. Save Jobs USA challenged the rule, arguing that DHS exceeded its authority under the Immigration and Nationality Act. *See* 8 U.S.C. § 1101 *et seq.*, *see also* 8 U.S.C. §§ 1103(a)(3), 1184(a)(1).

But this court has already interpreted the relevant provisions of the INA to answer a similar question in favor of DHS. *See Washington Alliance of Technology Workers v. DHS*, 50 F.4th 164 (D.C. Cir. 2022) ("*Washtech*"). Because Save Jobs USA has not meaningfully distinguished this case from that binding precedent, we affirm the district court's grant of summary judgment.

**I**

The Immigration and Nationality Act includes two provisions relevant to this case. The first is 8 U.S.C. § 1184(a)(1) — when an alien is admitted into the country as a nonimmigrant, the admission "shall be for such time and under such conditions as the [Secretary of Homeland Security] may by regulations prescribe." The second is 8 U.S.C. § 1103(a)(3) — the Secretary of Homeland Security "shall establish such regulations . . . and perform such other acts as he

3

deems necessary for carrying out his authority under the" INA. The upshot, according to our recent precedent, is that Congress, through the INA, "granted the Executive power to set the duration and terms of statutorily identified nonimmigrants' presence in the United States." *Washtech*, 50 F.4th at 177.

Two related classes of "statutorily identified nonimmigrants" are specialized foreign workers (H–1B visa holders) and their dependent spouses (H–4 visa holders). *See* 8 U.S.C. § 1101(a)(15)(H). H–1B holders are allowed to work in the United States for up to six years. But H–4 dependent spouses are generally not permitted to work.

This can lead to problems for H–1B visa holders seeking to become lawful permanent residents. *See Save Jobs USA v. DHS*, 942 F.3d 504, 506-08 (D.C. Cir. 2019) (outlining the process). Becoming a lawful permanent resident can take years, and frequent processing delays require numerous extensions of time. *See id.*

As for H–1B visa holders' dependent spouses (the H–4 visa holders), their "inability to work during these delays leads to personal and economic hardships that worsen over time, increasing the disincentives for H–1B nonimmigrants to pursue lawful permanent resident status and thus increasing the difficulties that U.S. employers have in retaining highly educated and highly skilled nonimmigrant workers." *Id.* at 507-08 (cleaned up).

In 2015, DHS promulgated a rule to address that situation, relying on the two INA provisions described above. Its "H–4 Rule" allows select H–4 visa holders to work in the United States while their H–1B spouses transition to lawful permanent resident status. *See* Employment Authorization for Certain H–4 Dependent Spouses, 80 Fed. Reg. 10,284, 10,311 (Feb. 25,

4

2015) (codified at 8 C.F.R. §§ 214.2, 274a.12, 274a.13) ("H–4 Rule"); *see also Save Jobs USA*, 942 F.3d at 507-08 (explaining the rule in detail). With the H–4 Rule, DHS hopes to "ameliorate certain disincentives for talented H–1B nonimmigrants to permanently remain in the United States and continue contributing to the U.S. economy as" lawful permanent residents. 80 Fed. Reg. 10,284, 10,284 (Feb. 25, 2015) (codified at 8 C.F.R. §§ 214.2, 274a.12, 274a.13).

Save Jobs USA challenged DHS's authority to issue the rule. *See Save Jobs USA v. DHS*, 664 F. Supp. 3d 143, 148-51 (D.D.C. 2023). The district court granted DHS's motion for summary judgment. *See id.* at 148 (citing *Washtech*, 50 F.4th at 164).[1] Save Jobs USA appealed.

## II

DHS says this court's recent decision in *Washtech* interpreted the Immigration and Nationality Act to authorize immigration-related employment rules like the H–4 Rule. Save Jobs USA makes little effort to dispute that reading of *Washtech*. We therefore affirm the district court's decision awarding summary judgment to DHS.

## A

*Washtech* reviewed an employment rule promulgated by DHS pursuant to the INA. 50 F.4th at 169-72 (citing 8 U.S.C. § 1184(a)(1)). The rule allowed foreign students (F–1 visa holders) who had completed their coursework to work for a

---

[1] The district court initially held that Save Jobs USA lacked standing and granted summary judgment to DHS. *See Save Jobs USA v. DHS*, 210 F. Supp. 3d 1, 13 (D.D.C. 2016). Our court reversed and remanded. *See Save Jobs USA*, 942 F.3d at 512.

5

limited time to gain practical training. *Id.* at 172 (citing 8 C.F.R. § 214.2(f)(5)(i), (f)(10), (f)(11)). To support the rule, DHS relied on § 1184(a)(1) and § 1103(a) of the INA. *Id.* at 177, 179.

*Washtech* upheld the F–1 Rule for two key reasons relevant on this appeal.[2]

First, according to *Washtech*, § 1184(a)(1) "specifically provides" DHS with "time-and-conditions authority." *Id.* at 190, 193. Because the F–1 Rule "regulates the 'time' and 'conditions' of admission for F–1 visa-holders, and because it is reasonably related to the distinct composition and purpose of that visa class, as defined in the F–1 provision, the Secretary had authority to promulgate it." *Id.* at 177.

Second, according to *Washtech*, our precedents recognize "broad authority conferred upon DHS by sections 1184(a) and 1103(a)." *Id.* at 179 (cleaned up). *Washtech* read those precedents to mean "that the INA need not specifically authorize each and every action taken by DHS, so long as its action is reasonably related to the duties imposed upon it." *Id.* (cleaned up).

---

[2] *Washtech* did not depend on *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). True, *Washtech* applied *Chevron* as a counter-factual, fallback argument. *See* 50 F.4th at 192 ("*even if* [the INA] is ambiguous on the point, the statute may reasonably be understood as the Department has read it") (emphasis added); *id.* ("*[e]ven if* alternative readings are available") (emphasis added). But that did not alter *Washtech*'s holding that the "best" and "most straightforward reading of the INA" authorized the challenged rule. *Id.*

6

With that understanding, we turn to our case. Here, DHS authorized certain nonimmigrants to work in the United States — just like in *Washtech*. And to do so, DHS relied on § 1184(a)(1) and § 1103(a) of the INA — just like in *Washtech*.

Save Jobs USA makes little effort trying to meaningfully distinguish this case from *Washtech*. Instead, it disparages *Washtech*, arguing that it "held that the Immigration and Nationality Act confers on DHS *the vast power to permit alien employment through regulation* through ancillary provisions that do not even mention employment." Save Jobs USA Br. at 16 (emphasis added).[3]

As the end of that last sentence suggests, Save Jobs USA disagrees with *Washtech* — and would like us to overrule it. *See id.* at 10, 15, 16-17. But we "cannot overrule a prior panel's decision, except via an *Irons* footnote or en banc review." *Robinson v. DHS Office of Inspector General*, 71 F.4th 51, 56 n.1 (D.C. Cir. 2023) (cleaned up).[4]

---

[3] In the district court, Save Jobs USA did "not cite, much less contest, the explicit statutory grant of time-and-conditions authority to DHS in 8 U.S.C. § 1184(a)(1)." *Save Jobs USA*, 664 F. Supp. 3d at 150. And on appeal, Save Jobs USA argues *Washtech* is inconsistent with past precedents, but does not name any relevant to this case. *See* Save Jobs USA Br. at 16-17.

[4] Last year, the court denied the petition for en banc review in *Washtech*. *Washington Alliance of Technology Workers v. DHS*, 58 F.4th 506, 508 (D.C. Cir. 2023) (en banc); *cf. Robinson*, 71 F.4th at 56 n.1 ("In an *Irons* footnote, named after the holding in *Irons v. Diamond*, 670 F.2d 265, 267-68 & n.11 (D.C. Cir. 1981), the panel seeks for its proposed decision the endorsement of the *en banc* court, and announces that endorsement in a footnote to the panel's opinion.") (cleaned up).

7

**B**

Save Jobs USA wants us to displace *Washtech* because it did not address the major questions doctrine. *See* Save Jobs USA Br. at 8-10, 16-17; *cf. Washtech*, 50 F.4th at 206 & n.11 (Henderson, J., concurring in part and dissenting in part) (raising major questions doctrine concerns); *Washington Alliance of Technology Workers v. DHS*, 58 F.4th 506, 508-11 (D.C. Cir. 2023) (Rao, J., dissenting from the denial of rehearing en banc). But that's not how stare decisis works.

The major questions doctrine holds that courts "expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up). Like a dictionary, or expressio unius, or the extraterritoriality canon, the major questions doctrine is a tool of statutory interpretation. That's true whether you think it's a linguistic canon, or a substantive canon with a constitutional basis safeguarding the separation of powers, or both. *Compare Biden v. Nebraska*, 143 S. Ct. 2355, 2376-83 (2023) (Barrett, J., concurring), *with West Virginia*, 597 U.S. at 736-46 (Gorsuch, J., concurring). Regardless, the function of the major questions doctrine is simple — to help courts figure out what a statute means. And so far as today's case is concerned, *Washtech* has already done that.

To be sure, vertical stare decisis requires fidelity to *West Virginia* when deciding any open question of statutory interpretation. It also requires a circuit panel to depart from a circuit precedent decided before *West Virginia* if the circuit precedent's reasoning was later "eviscerated" by the reasoning in *West Virginia*. *Dellums v. U.S. Nuclear Regulatory Commission*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988); *see also Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023)

8

("We may depart from the law of the case and from circuit precedent . . . based on an intervening Supreme Court decision.").

But *Washtech* was decided after *West Virginia*. So the relationship between those two cases was *Washtech*'s legal issue, not ours. And "if stare decisis means anything, it means a future court lacks the authority to say a previous court was wrong about how it resolved the actual legal issue before it." *Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024).

\*   \*   \*

We affirm the district court.

*So ordered*.