# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

# 𝔇.𝔔. 𝔔𝔦𝔯𝔠𝔲𝔦𝔱

---

### **Save Jobs USA**

*Appellant,*

*v.*

### **Department of Homeland Security**, *et. al.*

*Appellees.*

---

On appeal from an order entered in the
United States District Court for the District of Columbia,
1:15-cv-615
The Hon. Tanya S. Chutkan

## **Petition for Rehearing En Banc**

John M. Miano
Christopher Hajec
IMMIGRATION REFORM LAW
INSTITUTE
20 Massachusetts Ave., NW
Washington DC 2002
(202) 232-5590

# CERTIFICATE AS TO PARTIES

The following are the parties and *amici curiae* that appeared before the district court:

1. Plaintiff is Save Jobs USA.
2. Defendant is the U.S. Department of Homeland Security.
3. Intervenors are Anujkumar Dhamija and Immigration Voice.
4. *Amici curiae* are Accenture, Adobe Inc., Amazon.com, Inc., Apple Inc., Argo AI LLC, BSA | The Software Alliance, Business Roundtable, CGI Inc., Chamber of Commerce of the United States of America, Cisco Systems, Inc., Citrix Systems, Inc., CollectiveHealth, Inc., Compete America Coalition, Consumer Technology Association, Cummins Inc., eBay Inc., Electronic Arts Inc., FWD.us, Google LLC, Hewlett Packard Enterprise, Howard Hughes Medical Institute, HP Inc., IBM Corporation, Information Technology Industry Council (ITI), Intel Corporation, Lenovo (United States) Inc., Microsoft Corporation, National Association of Manufacturers, Partnership for a New American Economy Action Fund, PayPal, Pinterest Inc., Reddit, Inc., salesforce.com, inc., SAP, Society for Human Resource Management (SHRM), Square, Inc., StubHub, Inc., TechNet, Twitter, Inc., Waymo LLC, and Worldwide ERC

The following are the parties and *amici curiae* that appeared before this Court:

1. Appellant is Save Jobs USA.
2. Appellee is the U.S. Department of Homeland Security.
3. Intervenor-Appellees are Anujkumar Dhamija and Immigration Voice.
4. *Amici curiae* are American Immigration Council and American Immigration Lawyers Ass'n.

# TABLE OF CONTENTS

Certificate as to Parties .................................................................. i

Table of Authorities ..................................................................... iv

Glossary ....................................................................................... vii

Introduction and Rule 35(b) Statement ....................................... 1

Argument ....................................................................................... 6

   I. The panel decision does not address any issue raised
     on appeal. ................................................................................ 6

   II. The en banc court should overrule *Washtech.* ................... 14

Conclusion .................................................................................. 20

Certificate of Compliance with RuleS 32 and 35 ...................... 21

Rule 26.1 Disclosure Statement ................................................. 21

Certificate of Service .................................................................. 22

*The panel opinion and Appellant's opening brief are attached as addenda.*

# TABLE OF AUTHORITIES

Cases:

*Anwo v. INS*, 607 F.2d 435 (D.C. Cir. 1979) .................... 14–15

*Akbarin v. Immigr. & Naturalization Serv.*,
   669 F.2d 839 (1st Cir. 1982) .......................................... 14–15

*Am. Bar Ass'n v. FTC*,
   430 F.3d 457 (D.C. Cir. 2005) ................................................. 6

*Birdsong v. Holder*,
   641 F.3d 957 (8th Cir. 2011) .......................................... 14–15

*Elkins v. Moreno*, 435 U.S. 647 (1978) ............................. 14–15

*Gazeli v. Session*,
   856 F.3d 1101 (6th Cir. 2017) ....................................... 14–15

*J. W. Hampton, Jr., & Co. v. United States*,
   276 U.S. 394 (1928) ................................................................ 10

*Int'l Longshoremen's & Warehousemen's Union v. Meese*,
   891 F.2d 1374 (9th Cir. 1989) ............................................... 12

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
   616 F. Supp. 1387 (N.D. Cal. 1985) ....................................... 2

*Khano v. Immigr. & Naturalization Serv.*, 999 F.2d 1203
   (7th Cir. 1993) ................................................................ 14–15

*Lok v. Immigr. & Naturalization Serv.*,
   681 F.2d 107 (2d Cir. 1982) .......................................... 14–15

*Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014) .................... 6–7

*Mich. Gambling Opposition v. Kempthorne*,
   525 F.3d 23 (D.C. Cir. 2008) ................................................... 6

*Mistretta v. United States*, 488 U.S. 361 (1989) ......... 11, 18–19

*Morel v. Immigr. & Naturalization Serv.*,
   90 F.3d 833 (3d Cir. 1996) ............................................. 14–15

*Moreno v. Univ. of Md.*, 645 F.2d 217 (4th Cir. 1981) ...... 14–15

*Olaniyan v. Dist. Dir., Immigr. & Naturalization Serv.*,
  796 F.2d 373 (10th Cir. 1986) ........................................ 14–15

*Save Jobs USA v. DHS*,
  664 F. Supp. 3d 143 (D.D.C. 2023) .................................. 4, 7

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) ........................................... 7

*Toll v. Moreno*, 458 U.S. 1 (1982) .................................... 14–15

*Touray v. United States AG*,
  546 F. App'x 907 (11th Cir. 2013) ................................... 14–15

*United States v. Igbatayo*,
  764 F.2d 1039 (5th Cir. 1985) ......................................... 14–15

*Von Kennel Gaudin v. Remis*,
  379 F.3d 631 (9th Cir. 2004) ........................................... 14–15

*Wash. All. of Technology Workers v. DHS*,
  50 F.4th 164 (D.C. Cir. 2022) ........................................... 2–19

*Wash. All. of Tech. Workers v. DHS,*
  58 F.4th 506 (D.C. Cir. 2023) ................................. 5, 12–19

*West Virginia v. EPA*, 597 U.S. 697 (2022) ........................... 18

Statutes:

8 U.S.C. § 1101(a)(15) ........................................................ 9, 18

  8 U.S.C. § 1101(a)(15)(F)(i) ........................................ 4, 8, 16

  8 U.S.C. § 1101(a)(15)(F)(ii) ........................................... 9

  8 U.S.C. § 1101(a)(15)(H) ............................................ 3–4, 16

  8 U.S.C. § 1101(a)(15)(I) ................................................... 9

  8 U.S.C. § 1101(a)(15)(K)(iii) ........................................... 9

  8 U.S.C. § 1101(a)(15)(M)(ii) ........................................... 9

8 U.S.C. § 1101(a)(15)(O)(iii) ...................................................... 9

8 U.S.C. § 1101(a)(15)(P)(iv) ....................................................... 9

8 U.S.C. § 1101(a)(15)(R) ............................................................ 9

8 U.S.C. § 1101(a)(15)(S) ............................................................ 9

8 U.S.C. § 1101(a)(15)(T) .......................................................... 15

8 U.S.C. § 1101(a)(15)(T)(ii) ....................................................... 9

8 U.S.C. § 1101(a)(15)(U)(ii) ...................................................... 9

8 U.S.C. § 1184(a)(1) ................................................................ 11

8 U.S.C. § 1324a(h)(3) .............................................................. 12

Regulations:

Powers and Duties of Service Officers; Availability of
    Service Records, Control of Employment of Aliens,
    55 Fed. Reg. 25,928 (June 25, 1990) ....................................... 2

Extending Period of Optional Practical Training by 17
    Months for F-1 Nonimmigrant Students With STEM
    Degrees and Expanding Cap-Gap Relief for All F-1
    Students With Pending H-1B Petitions, 73 Fed. Reg.
    18,944 (Apr. 8, 2008) ...................................................... 2, 18

Employment Authorization for Certain
    H-4 Dependent Spouses,
    80 Fed. Reg. 10,284 (Feb. 24, 2015) ............... 3–5, 7, 9–10, 12

Other Authorities:

H.R Rep. 81-1365 (1952) ........................................................... 1

S. Rep. 82-1137 (1952) .............................................................. 1

Shan Li & Matt Morrison, *Edison's plans to cut jobs, hire
    foreign workers is assailed*, LA Times, Feb. 10, 2015 ............ 4

# GLOSSARY

| | |
|---|---|
| DHS | Department of Homeland Security |
| H-4 Rule | Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284 (Feb. 24, 2015) |
| INA | Immigration and Nationality Act |

## INTRODUCTION AND RULE 35(B) STATEMENT

Rehearing is necessary to correct a new line of cases that conflicts with a half-century of settled precedent regarding the scope of the nonimmigrant visa statutes. The Immigration and Nationality Act ("INA") created a comprehensive scheme for protecting American workers. H.R Rep. 81-1365 (1952) & S. Rep. 82-1137 (1952). These cases have dismantled those protections, both by allowing the Department of Homeland Security ("DHS") to create foreign labor programs through free-standing regulations that lack protections for American workers and by reducing the statutory protections themselves to mere entry requirements that do not apply after an alien enters the United States.

No provision in the INA expressly allows the executive to authorize classes of aliens eligible for employment without congressional guidance; nor could any provision do so without violating the delegation doctrine.[1] Nonetheless, this has not stopped the executive from authorizing employment through regulations untethered to any statute. *E.g.*, Powers and Duties of Service Offic-

---

[1] Because the key events arise from parallel litigation spanning 16 years, this history is not comprehensive.

ers; Availability of Service Records, Control of Employment of Aliens, 55 Fed. Reg. 25,928 (June 25, 1990) (interim rule still in effect authorizing employment on B visitor visas). The executive has frequently published regulations specifically intended to undermine the protections Congress created for American workers. Historically, when such regulations have been challenged, the courts have evaluated them according to the statutory terms of the visa in question. *E.g., Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 616 F. Supp. 1387 (N.D. Cal. 1985).

In 2008, DHS published a regulation whose sole purpose was to circumvent the limits on the number of H-1B guestworkers, which Congress had created to protect American workers, by allowing alien graduates to remain in student visa status for years after graduation and work. 73 Fed. Reg. 18,944 (Apr. 8, 2008). This Court addressed post-graduation work on student visas in *Wash. All. of Technology Workers v. DHS*, 50 F.4th 164 (D.C. Cir. 2022) ("*Washtech*"). *Washtech* was the first court decision to assert that DHS had the independent authority to allow alien employment through regulations lacking a directive from Congress. *Washtech* announced that (1) the statutory terms for nonimmigrant visas were strictly entry requirements, *id*. at 169, that DHS

can disregard after an alien enters the country, *id*. at 192 and (2) DHS can allow employment on any nonimmigrant visa that is reasonably related to the visa, *id*. at 169. Under *Washtech*, a regulation can directly contradict the statutory terms of a visa but still be reasonably related to the visa. *Id*. at 192.

The H-4 visa, created in 1970, allows dependents of an H nonimmigrant guestworker to "accompany" or "follow to join" the guestworker into the United States. 8 U.S.C. § 1101(a)(15)(H). For nearly a half-century, the H-4 visa was interpreted as not permitting employment. Nevertheless, in 2015, DHS published a rule allowing spouses of H-1B guestworkers who applied for permanent residency to engage in work without any restrictions. Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284 (Feb. 24, 2015) ("H-4 Rule"). The H-4 Rule was the very first rule authorizing alien employment made under the claim that DHS shared with Congress the power to authorize classes of aliens eligible for employment. *Id*. 10,285, 10,294–95. The H-4 Rule was immediately challenged by Save Jobs USA, a group of former employees of Southern California Edison who were among 400 Americans the com-

pany replaced with H-1B workers. *See, e.g.,* Shan Li & Matt Morrison, *Edison's plans to cut jobs, hire foreign workers is assailed*, LA Times, Feb. 10, 2015.

The district court's opinion is published as *Save Jobs USA v. DHS*, 664 F. Supp. 3d 143 (D.D.C. 2023). Applying *Washtech*, the district court concluded that DHS had satisfied the reasonable relationship standard merely by explaining why it had permitted H-4 employment, and that the rule was within DHS's authority. *Id.* at 152.

A panel of this court affirmed the district court's decision. The panel held that authorizing H-4 visa employment was within DHS's authority because unrestricted employment under the H-4 Rule was just as reasonably related to "accompanying" or "following to join" as employment restricted to that directly related to alien's course of study was reasonably related to pursuing a full course of study at a school. *Washtech.* Slip Op. 2; *see also* 8 U.S.C. § 1101(a)(15)(F)(i) & (H).

The panel decision demonstrates that the *Save Jobs USA*/*Washtech* line of cases nullifies any protections Congress has enacted for American workers by allowing DHS to authorize

employment in competition with American workers through extra-statutory regulations, or by reducing the statutory protections themselves to entry requirements DHS can disregard. *Washtech*, and now *Save Jobs USA*, "muddles our immigration law" by "replacing Congress's careful distinctions with unrestricted Executive Branch discretion" thus raising "a question of exceptional importance." *Wash. All. of Tech. Workers v. DHS.*, 58 F.4th 506, 508 (D.C. Cir. 2023) (*Washtech II*). (Rao, J., dissenting from denial of reh'g en banc). In further illustration of the question's importance, counsel for Save Jobs USA was invited to testify before the Senate Judiciary Committee on how the H-4 Rule undermined the alien employment system. Mar. 17, 2015. In addition, treating the statutory terms of nonimmigrant visas solely as entry requirements that DHS can ignore after an alien enters the United States is contrary to precedent of the United States Supreme Court, this Court, and every numbered circuit. *See* § II, *infra*.

# ARGUMENT

## I. The panel decision does not address any issue raised on appeal.

The panel decision presents the *outré* spectacle of an opinion that fails to address any of the issues raised on appeal. *Compare* Slip Op. 1–8 *with* Op. Br. viii. The panel's entire analysis of the case is that a panel cannot overrule a previous panel decision (*Washtech*). Slip. Op. 6–7. Yet Save Jobs USA *never* called on the panel to overrule *Washtech*, because, obviously, a panel has no power to do so. Op. Br. 1–17. To be sure, Save Jobs USA raised the question of the validity of *Washtech* in 1 1/3 pages at the end of its 17-page opening brief, specifically identifying the major question doctrine and the delegation doctrine as conflicting with it (and preserving these issues).[2] Op. Br. 16–17. Save Jobs USA argued that *Washtech*, as inconsistent with earlier precedent, "cannot prevail." Op. Br. 17. In particular, *Washtech* can provide

---

[2] A footnote, Slip Op. 6 n.3, states Appellant did not cite authority inconsistent with *Washtech*, yet the page referenced by the footnote cites *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014); *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 469 (D.C. Cir. 2005); and *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 30 (D.C. Cir. 2008) as conflicting authority.

no guidance on the major question doctrine when it did not address the issue. While a panel cannot overturn another panel, it can apply earlier precedent that is on point. *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011). Here, the panel could have applied the earlier *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014) to address the major question doctrine where *Washtech* was inapplicable because of its silence.

Entirely unmentioned in the panel decision is the fact that Save Jobs USA argued that the H-4 Rule was *inconsistent with Washtech*: "The district court's decision relies on a 'reasonably related' standard that is not consistent with that of *Washtech*." Op. Br. 10–13, viii. *Washtech* held that DHS may permit employment through regulation that is reasonably related to the purpose for which the alien was allowed to enter. 50 F.4th at 170, 180. *Washtech* emphasized that, because the rule it addressed limited student visa employment to that which was directly related to the student's course of study, the employment was reasonably related to the purpose for which the alien was allowed to enter. 50 F.4th at 168–69, 179–80. By contrast, the H-4 Rule permits unrestricted employment, and the district court gave no explana-

tion of why employment under the H-4 Rule was reasonably related to the purpose of admission of "individuals 'accompanying or 'following to join' the holder of an H-1B visa in the United States." *Save Jobs USA*, 664 F. Supp. 3d at 152–53.

The reasonably related standard is the only limit *Washtech* put on DHS's power to allow alien employment. 50 F.4th at 169. Yet the panel decision gives no explanation of how the unrestricted employment it sanctioned even satisfies the *Washtech* standard. Instead, the decision discounts the arguments made in Op. Br. 10–13 by asserting that "Save Jobs USA makes little effort trying to meaningfully distinguish this case from *Washtech*." Op. 6. If the relationship between *unrestricted employment* and "accompanying" or "following to join" a guestworker in the U.S. is indistinguishable from the relationship between *employment restricted to an alien's course of study* and "pursu[ing] a full course of study," the reasonable relationship standard announced in *Washtech* becomes so malleable as to be no standard at all. *See* 8 U.S.C. § 1101(a)(15)(F)(i) & (H). Indeed, the panel decision never even mentions the statutory terms of the H-4 visa. The panel decision implicitly holds that *Washtech* confers unlimited power on DHS to permit alien employment through regulation.

The panel decision's expanded interpretation of *Washtech* creates an unobstructed highway for DHS to allow employment on any visa through regulation by not finding any significant distinction between the work programs at issue under F-1 and H-4 visas. Slip Op. 2. The panel decision took the authority to allow narrowly restricted alien employment conferred on DHS in *Washtech* and expanded it into the power to allow completely unrestricted employment, providing a vivid demonstration of the slippery slope at work. Illustrating how wide *Save Jobs USA* has thrown open the gates of Troy, the panel decision immediately removes any barrier to regulations allowing work on ten more visas that use the same language as the H-4 visa. 8 U.S.C. § 1101(a)(15)(F)(ii), (I), (K)(iii), (M)(ii), (O)(iii), (P)(iv), (R), (S), (T)(ii), (U)(ii). Furthermore, section 1101(a)(15) defines nearly every non-diplomatic visa with terms that could be considered synonymous with those of the H-4 visa (that is, some variant of arriving in the United States).

Save Jobs USA raised the issue that "[t]he H-4 Rule violates the major question doctrine." Op. Br. 8–10, viii. The district court did not address that issue. The panel decision also says nothing about whether the H-4 Rule complies with the major question

doctrine. Instead, it says that "Save Jobs USA wants us to displace *Washtech* because it did not address the major questions doctrine" and explains why the panel cannot overrule *Washtech*. Slip Op. 7–8. Yet there is no place in Save Jobs USA's briefing that calls for the panel to overturn *Washtech*.[3] Worse yet, the panel decision does not address the issue actually raised on appeal: whether *the H-4 Rule* complies with the major question doctrine. Op. Br. 8–10, viii. The implicit holding of the panel decision is that any DHS regulation authorizing alien employment comports with the major question doctrine. *See* Slip Op. 7–8.

Save Jobs USA also raised on appeal the issue that "[t]he H-4 Rule violates the delegation doctrine." Op. Br. 14–15. On summary judgment before the district court, Save Jobs USA showed that there was no legislative principle laid down by Congress that guides *when* DHS may independently authorize alien employment. Sum. J. Mot. Br. 14–15 (citing *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). When the *Washtech* decision came out a year later, it noted that the same delegation

_____

[3] Save Jobs USA's argument on this point mentions *Washtech* once to state the fact that it provides no guidance on whether the H-4 Rule complies with the major question doctrine because it did not address the issue. Op. Br. 10.

issue had been raised in that case as well, but the decision also did not identify a *legislative* principle providing such guidance. 50 F.4th at 191–92. Six months later, the district court answered this question by concluding that the reasonable relation standard from *Washtech* was the guiding legislative principle. 664 F. Supp. 3d at 152. Yet this cannot be the guiding *legislative principle* laid down by Congress because the reasonable relation standard is entirely judicially-created and does not appear anywhere in the INA. With no answer to the question raised, Save Jobs USA reraised on appeal the issue that there was no legislative principle that guides when DHS could permit employment on H-4 visas. Op. Br. 14–15 (Jan. 2024). The panel opinion gives no answer. So now this Court has issued two opinions affirming rules authorizing alien employment on a massive scale without identifying any intelligible legislative principle laid down by Congress that guides when DHS can exercise such power, despite the constitutional requirement that there be one. *Mistretta v. United States*, 488 U.S. 361, 372 (1989).

The panel opinion states, quoting the district court, that "Save Jobs USA did 'not cite, much less contest, the explicit statutory grant of time-and-conditions authority to DHS in 8 U.S.C.

§ 1184(a)(1).'" Slip Op. 6 n.3. That is because Save Jobs USA's briefing reflected the judicial interpretation that existed at the time briefing was conducted. Prior the *Washtech* decision, all evaluations of agency authority to allow alien employment had been based on the statutory terms of the visa in question.[4] *E.g., Int'l Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1380–84 (9th Cir. 1989). *Washtech*'s relegation of the visa statutes to mere entry requirements precludes following that existing practice. 50 F.4th at 169. Instead, *Washtech* adopted the never-before-seen interpretation that 8 U.S.C. § 1184(a)(1) conferred on DHS independent authority to allow alien employment, *a year after briefing was completed in the district court.*[5] 50 F.4th at 169–70. Save Jobs USA has now faced rebuke from both the panel and the district court for failing to address a judicial interpretation that had not even existed *at the*

---

[4] The H-4 Rule was the very first published regulation authorizing alien employment to make the claim that the executive had inherent authority to independently allow alien employment.

[5] The H-4 Rule cites section 1184(a) once for general authority. 80 Fed. Reg. at 10,294. The H-4 Rule cites section 1324a(h)(3) as the source for the authority to allow alien employment. *Id*. at 10,285, 10,294–95.

*time of briefing*. In any event, § 1184(a)(1)'s grant to DHS of authority of a certain scope—to set the times and conditions of nonimmigrants' admission—contains no guiding principle about how it is to exercise that authority, or what times and conditions it may or may not set; instead, the provision refers to the principles contained in the statutory visa definitions when it directs the agency to insure the departure of out-of-status aliens, *id.*, and these statutory principles, prior to *Washtech*, were always thought to guide the agency's times and conditions regulations. Under *Washtech*, of course, these definitions have been annulled, leaving § 1184(a)(1) bereft of any guidance about how the agency is to exercise its times and conditions authority. *Washtech* implicitly recognizes this lack of guidance as a problem by attempting to solve it with the reasonable relation standard, but that is not a statutory principle.

The panel decision raises a serious question: Has a party been deprived of its right to appeal when a court of appeals panel fails to address *any* issue raised on appeal? This court can correct that injustice with en banc review.

## II. The en banc court should overrule *Washtech.*

The panel decision rightly points out that a panel cannot overrule a decision of a previous panel. Slip Op. 8. An en banc court, however, can do just that. This petition presents an opportunity to back away from the *Save Jobs USA/Washtech* line of cases before crossing the event horizon into a totally absurd nonimmigrant visa system.

One of *Washtech*'s principal holdings is that the nonimmigrant visa statutes only specify entry requirements that cease to apply after an alien enters the country, removing them as the authority for determining whether DHS can permit alien employment. 50 F.4th at 189. *Washtech*'s treatment of the visa statutes as entry requirements explicitly applies to all nonimmigrant visas. *Washtech*, 50 F.4th at 189; *Washtech II*, 58 F.4th at 510. *Washtech*'s entry-requirement-only interpretation is contrary to precedent of the Supreme Court, every numbered circuit, and this circuit, all of which treat the statutory visa terms as applying to an alien's entire stay.[6] *Toll v. Moreno*, 458 U.S. 1, 14 n. 20 (1982); *Elkins v. Moreno*, 435 U.S. 647, 665–66 (1978); *Anwo v.*

---

[6] The Federal Circuit has not had an occasion to weigh in on this issue.

*INS*, 607 F.2d 435, 437 (D.C. Cir. 1979); *Akbarin v. Immigr. & Naturalization Serv.*, 669 F.2d 839, 840 (1st Cir. 1982); *Lok v. Immigr. & Naturalization Serv.*, 681 F.2d 107, 109 & n. 3 (2d Cir. 1982); *Morel v. Immigr. & Naturalization Serv.*, 90 F.3d 833, 838 (3d Cir. 1996); *Moreno v. Univ. of Md.*, 645 F.2d 217 (4th Cir. 1981), aff'd, 458 U.S. 1; *United States v. Igbatayo*, 764 F.2d 1039 (5th Cir. 1985); *Gazeli v. Session*, 856 F.3d 1101, 1106 (6th Cir. 2017); *Khano v. Immigr. & Naturalization Serv.*, 999 F.2d 1203, 1207 & n. 2 (7th Cir. 1993); *Birdsong v. Holder*, 641 F.3d 957, 958 (8th Cir. 2011); *Von Kennel Gaudin v. Remis*, 379 F.3d 631, 637 (9th Cir. 2004); *Olaniyan v. Dist. Dir., Immigr. & Naturalization Serv.*, 796 F.2d 373, 374 (10th Cir. 1986); *Touray v. United States AG*, 546 F. App'x 907, 912 (11th Cir. 2013); *see also Washtech*, 50 F.4th at 199 (Henderson, J. dissenting) (noting conflict with precedent); *Washtech II*, 58 F.4th at 511 n.2 (explaining how the Third Circuit authority *Washtech* relied on for its broad entry-requirement only interpretation does not support that interpretation). Until *Washtech*, no court had even entertained the proposition that the terms of the nonimmigrant visa statutes do not apply for an alien's entire stay.

The entry-requirement-only interpretation has the effect of creating absurdity throughout the nonimmigrant visa system. The M visa's terms are nonsensical under *Washtech*. 50 F.4th at 202 (Henderson, J. dissenting). Because the statutory terms of the T visa only apply after entry, they are totally nonsensical, as well, under *Washtech*'s holding that the visa statutes only apply before entry. 8 U.S.C. § 1101(a)(15)(T). Nearly any change of status creates absurdity under *Washtech*. For example, if one enters on a B visitor visa, and changes status to an F-1 student visa while in the United States, then, under *Washtech,* the student visa terms do not apply at all because the alien already entered on a B visa. *Washtech* even permits DHS to disregard the requirements of the student visa at entry by allowing it to admit aliens who intend to work on a student visa after graduation, contrary to the entry requirement that they solely pursue a course of study at a school. 8 U.S.C. § 1101(a)(15)(F)(i).

The entry-requirement-only interpretation allows DHS to erase protections Congress has enacted protecting American workers. For example, the H visa category defines guestworker visas with provisions providing protections for American workers, such as prevailing wage requirements. 8 U.S.C. § 1101(a)(15)(H).

*Washtech* makes explicit that such protections are mere entry requirements that DHS can disregard in the future, in the same way that *Washtech* permits DHS now to disregard the statutory restriction that student visas are "solely" for pursuing a course of study at an academic institution after the alien enters the country. *Washtech II*, 50 F4th at 510; *Washtech*, 50 F.4th at 189.

Section 1184(a)(1) authorizes DHS to issue regulations governing the "admission" (lawful entry) of a nonimmigrant. *Washtech* creates the dissonance in that it reduces Congress's visa terms to mere entry requirements that cease to apply after entry but DHS's entry requirements persist after entry and are the sole authority governing an alien's conduct in the United States. *See Washtech II,* 58 F.4th at 510 (Rao, J., dissenting from denial of reh'g en banc).

*Washtech*'s other principle holding is that DHS may permit employment on any visa that is reasonably related to the purpose of entry. 50 F.4th at 169–70. The panel decision illustrates how "capacious" *Washtech*'s reasonable relationship standard is. *Washtech II*, 58 F.4th at 509. *Washtech* created a shaky foundation by allowing a regulation to conflict directly with a visa's statutory terms while still being reasonably related to the visa.

50 F.4th at 192–93 (holding that a regulation permitting post-graduate work in industry was reasonably related to a statute that allowed entry solely to pursue a course of study at a school). The panel decision demonstrates how the reasonably related standard quickly becomes no standard at all. *See* § I, *supra*.

The vast power *Washtech* conferred on DHS conflicts with precedent of the Supreme Court. "[C]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (internal quotation marks omitted). Yet under *Save Jobs USA/Wastech*, this Court is permitting DHS to create massive alien employment programs with no express authority from Congress to do so.

Indeed, there is not even a tortuous and dubious explanation of how Congress granted DHS this authority. Rather, once the statutory visa terms were discounted as mere entry requirements, *no* intelligible legislative principle has been identified that guides when DHS may exercise its work-authorization power, as the Constitution requires, even though the standard established by the Supreme Court for such a principle is far from demanding.

*Mistretta v. United State*s, 488 U.S. 361, 372 (1989). For example—and apparently without running afoul of the delegation doctrine—Congress could have granted DHS broad power to authorize aliens to work "in the national interest," but it did not do so.

The panel decision demonstrates that, taken together, *Save Jobs USA and Washtech* unmistakably entail that DHS may allow alien employment at will through regulations the agency devises itself, without statutory guidance, and thus that this Court has inadvertently erased the distinction Congress created in the INA between work and non-work visas. *Washtech II*, 58 F.4th at 510 (Rao, J., dissenting from denial of reh'g en banc).

Under *Save Jobs USA* and *Washtech*, it is hard to imagine any protection for American workers Congress created in section 1101(a)(15) that DHS cannot nullify now through regulation,[7] either by allowing similar work through regulation or treating a provision protecting American workers as an entry requirement that it can disregard after entry. *Washtech* "turns Congress's carefully calibrated scheme on its head." *Washtech II*, 58 F.4th at

---

[7] The very reason DHS gave for extending work on student visas, which *Washtech* ultimately endorsed, was to circumvent protections Congress created for American workers. 73 Fed. Reg. 18,946–47, 18,953.

509. Therefore, this Court should back out of the *Save Jobs USA/Washtech* line of cases now, before stumbling deeper into a black hole of absurdity-generating precedent.

## CONCLUSION

For the reasons stated above, this Court should grant rehearing en banc.

Respectfully submitted, September 12, 2024.

/s/ John M. Miano
D.C. Bar No. 1003068
Christopher Hajec
D.C. Bar No. 492551
Immigration Reform Law Institute
25 Massachusetts Ave., N.W.
Suite 335
Washington, D.C. 20001
(202) 232-5590
miano@colosseumbuilders.com

## CERTIFICATE OF COMPLIANCE WITH
## RULES 32 AND 35

This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because that brief contains 3,851 words. That brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because that brief was prepared in a proportionally spaced typeface using Microsoft Word for Mac 2021 using 14 pt. Century Schoolbook.

/s/ John M. Miano
D.C. Bar No. 1003068
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590
jmiano@verizon.net

## RULE 26.1 DISCLOSURE STATEMENT

Rule 26.1 is not applicable to Appellant Save Jobs USA.

## CERTIFICATE OF SERVICE

I certify that on September 12, 2024, I filed the attached Petition for Rehearing En Banc with the ECF system that will provide notice and copies to all parties.

/s/ John M. Miano
D.C. Bar No. 1003068
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590
jmiano@verizon.net

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted April 26, 2024          Decided August 2, 2024

No. 23-5089

SAVE JOBS USA,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
OFFICE OF GENERAL COUNSEL, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00615)

———

*John M. Miano* and *Christopher Hajec* were on the briefs for appellant.

*Carl E. Goldfarb* and *Megan Nyman* were on the brief for appellees Immigration Voice and Anujkumar Dhamija.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General, U.S. Department of Justice, *Glenn M. Girdharry*, Assistant Director, and *Alessandra Faso*, Trial Attorney, were on the brief for appellee United States Department of Homeland Security.  *Joshua S. Press*, Attorney, entered an appearance.

2

*Leslie K. Dellon* and *Jennifer R. Coberly* were on the brief for *amici curiae* American Immigration Council and American Immigration Lawyers Association in support of appellees.

Before: SRINIVASAN, *Chief Judge*, WILKINS and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: The Department of Homeland Security issued a rule that allows certain visa holders to work in the United States. Save Jobs USA challenged the rule, arguing that DHS exceeded its authority under the Immigration and Nationality Act. *See* 8 U.S.C. § 1101 *et seq.*, *see also* 8 U.S.C. §§ 1103(a)(3), 1184(a)(1).

But this court has already interpreted the relevant provisions of the INA to answer a similar question in favor of DHS. *See Washington Alliance of Technology Workers v. DHS*, 50 F.4th 164 (D.C. Cir. 2022) ("*Washtech*"). Because Save Jobs USA has not meaningfully distinguished this case from that binding precedent, we affirm the district court's grant of summary judgment.

## I

The Immigration and Nationality Act includes two provisions relevant to this case. The first is 8 U.S.C. § 1184(a)(1) — when an alien is admitted into the country as a nonimmigrant, the admission "shall be for such time and under such conditions as the [Secretary of Homeland Security] may by regulations prescribe." The second is 8 U.S.C. § 1103(a)(3) — the Secretary of Homeland Security "shall establish such regulations . . . and perform such other acts as he

3

deems necessary for carrying out his authority under the" INA. The upshot, according to our recent precedent, is that Congress, through the INA, "granted the Executive power to set the duration and terms of statutorily identified nonimmigrants' presence in the United States." *Washtech*, 50 F.4th at 177.

Two related classes of "statutorily identified nonimmigrants" are specialized foreign workers (H–1B visa holders) and their dependent spouses (H–4 visa holders). *See* 8 U.S.C. § 1101(a)(15)(H). H–1B holders are allowed to work in the United States for up to six years. But H–4 dependent spouses are generally not permitted to work.

This can lead to problems for H–1B visa holders seeking to become lawful permanent residents. *See Save Jobs USA v. DHS*, 942 F.3d 504, 506-08 (D.C. Cir. 2019) (outlining the process). Becoming a lawful permanent resident can take years, and frequent processing delays require numerous extensions of time. *See id.*

As for H–1B visa holders' dependent spouses (the H–4 visa holders), their "inability to work during these delays leads to personal and economic hardships that worsen over time, increasing the disincentives for H–1B nonimmigrants to pursue lawful permanent resident status and thus increasing the difficulties that U.S. employers have in retaining highly educated and highly skilled nonimmigrant workers." *Id.* at 507-08 (cleaned up).

In 2015, DHS promulgated a rule to address that situation, relying on the two INA provisions described above. Its "H–4 Rule" allows select H–4 visa holders to work in the United States while their H–1B spouses transition to lawful permanent resident status. *See* Employment Authorization for Certain H–4 Dependent Spouses, 80 Fed. Reg. 10,284, 10,311 (Feb. 25,

4

2015) (codified at 8 C.F.R. §§ 214.2, 274a.12, 274a.13) ("H–4 Rule"); *see also Save Jobs USA*, 942 F.3d at 507-08 (explaining the rule in detail). With the H–4 Rule, DHS hopes to "ameliorate certain disincentives for talented H–1B nonimmigrants to permanently remain in the United States and continue contributing to the U.S. economy as" lawful permanent residents. 80 Fed. Reg. 10,284, 10,284 (Feb. 25, 2015) (codified at 8 C.F.R. §§ 214.2, 274a.12, 274a.13).

Save Jobs USA challenged DHS's authority to issue the rule. *See Save Jobs USA v. DHS*, 664 F. Supp. 3d 143, 148-51 (D.D.C. 2023). The district court granted DHS's motion for summary judgment. *See id.* at 148 (citing *Washtech*, 50 F.4th at 164).[1] Save Jobs USA appealed.

## II

DHS says this court's recent decision in *Washtech* interpreted the Immigration and Nationality Act to authorize immigration-related employment rules like the H–4 Rule. Save Jobs USA makes little effort to dispute that reading of *Washtech*. We therefore affirm the district court's decision awarding summary judgment to DHS.

## A

*Washtech* reviewed an employment rule promulgated by DHS pursuant to the INA. 50 F.4th at 169-72 (citing 8 U.S.C. § 1184(a)(1)). The rule allowed foreign students (F–1 visa holders) who had completed their coursework to work for a

---

[1] The district court initially held that Save Jobs USA lacked standing and granted summary judgment to DHS. *See Save Jobs USA v. DHS*, 210 F. Supp. 3d 1, 13 (D.D.C. 2016). Our court reversed and remanded. *See Save Jobs USA*, 942 F.3d at 512.

5

limited time to gain practical training. *Id.* at 172 (citing 8 C.F.R. § 214.2(f)(5)(i), (f)(10), (f)(11)). To support the rule, DHS relied on § 1184(a)(1) and § 1103(a) of the INA. *Id.* at 177, 179.

*Washtech* upheld the F–1 Rule for two key reasons relevant on this appeal.[2]

First, according to *Washtech*, § 1184(a)(1) "specifically provides" DHS with "time-and-conditions authority." *Id.* at 190, 193. Because the F–1 Rule "regulates the 'time' and 'conditions' of admission for F–1 visa-holders, and because it is reasonably related to the distinct composition and purpose of that visa class, as defined in the F–1 provision, the Secretary had authority to promulgate it." *Id.* at 177.

Second, according to *Washtech*, our precedents recognize "broad authority conferred upon DHS by sections 1184(a) and 1103(a)." *Id.* at 179 (cleaned up). *Washtech* read those precedents to mean "that the INA need not specifically authorize each and every action taken by DHS, so long as its action is reasonably related to the duties imposed upon it." *Id.* (cleaned up).

---

[2] *Washtech* did not depend on *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). True, *Washtech* applied *Chevron* as a counter-factual, fallback argument. *See* 50 F.4th at 192 ("*even if* [the INA] is ambiguous on the point, the statute may reasonably be understood as the Department has read it") (emphasis added); *id.* ("*[e]ven if* alternative readings are available") (emphasis added). But that did not alter *Washtech*'s holding that the "best" and "most straightforward reading of the INA" authorized the challenged rule. *Id.*

6

With that understanding, we turn to our case. Here, DHS authorized certain nonimmigrants to work in the United States — just like in *Washtech*. And to do so, DHS relied on § 1184(a)(1) and § 1103(a) of the INA — just like in *Washtech*.

Save Jobs USA makes little effort trying to meaningfully distinguish this case from *Washtech*. Instead, it disparages *Washtech*, arguing that it "held that the Immigration and Nationality Act confers on DHS *the vast power to permit alien employment through regulation* through ancillary provisions that do not even mention employment." Save Jobs USA Br. at 16 (emphasis added).[3]

As the end of that last sentence suggests, Save Jobs USA disagrees with *Washtech* — and would like us to overrule it. *See id.* at 10, 15, 16-17. But we "cannot overrule a prior panel's decision, except via an *Irons* footnote or en banc review." *Robinson v. DHS Office of Inspector General*, 71 F.4th 51, 56 n.1 (D.C. Cir. 2023) (cleaned up).[4]

---

[3] In the district court, Save Jobs USA did "not cite, much less contest, the explicit statutory grant of time-and-conditions authority to DHS in 8 U.S.C. § 1184(a)(1)." *Save Jobs USA*, 664 F. Supp. 3d at 150. And on appeal, Save Jobs USA argues *Washtech* is inconsistent with past precedents, but does not name any relevant to this case. *See* Save Jobs USA Br. 16-17.

[4] Last year, the court denied the petition for en banc review in *Washtech*. *Washington Alliance of Technology Workers v. DHS*, 58 F.4th 506, 508 (D.C. Cir. 2023) (en banc); *cf. Robinson*, 71 F.4th at 56 n.1 ("In an *Irons* footnote, named after the holding in *Irons v. Diamond*, 670 F.2d 265, 267-68 & n.11 (D.C. Cir. 1981), the panel seeks for its proposed decision the endorsement of the *en banc* court, and announces that endorsement in a footnote to the panel's opinion.") (cleaned up).

7

**B**

Save Jobs USA wants us to displace *Washtech* because it did not address the major questions doctrine. *See* Save Jobs USA Br. at 8-10, 16-17; *cf. Washtech*, 50 F.4th at 206 & n.11 (Henderson, J., concurring in part and dissenting in part) (raising major questions doctrine concerns); *Washington Alliance of Technology Workers v. DHS*, 58 F.4th 506, 508-11 (D.C. Cir. 2023) (Rao, J., dissenting from the denial of rehearing en banc). But that's not how stare decisis works.

The major questions doctrine holds that courts "expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up). Like a dictionary, or expressio unius, or the extraterritoriality canon, the major questions doctrine is a tool of statutory interpretation. That's true whether you think it's a linguistic canon, or a substantive canon with a constitutional basis safeguarding the separation of powers, or both. *Compare Biden v. Nebraska*, 143 S. Ct. 2355, 2376-83 (2023) (Barrett, J., concurring), *with West Virginia*, 597 U.S. at 736-46 (Gorsuch, J., concurring). Regardless, the function of the major questions doctrine is simple — to help courts figure out what a statute means. And so far as today's case is concerned, *Washtech* has already done that.

To be sure, vertical stare decisis requires fidelity to *West Virginia* when deciding any open question of statutory interpretation. It also requires a circuit panel to depart from a circuit precedent decided before *West Virginia* if the circuit precedent's reasoning was later "eviscerated" by the reasoning in *West Virginia*. *Dellums v. U.S. Nuclear Regulatory Commission*, 863 F.2d 968, 978 n.11 (D.C. Cir. 1988); *see also Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023)

8

("We may depart from the law of the case and from circuit precedent . . . based on an intervening Supreme Court decision.").

But *Washtech* was decided after *West Virginia*. So the relationship between those two cases was *Washtech*'s legal issue, not ours. And "if stare decisis means anything, it means a future court lacks the authority to say a previous court was wrong about how it resolved the actual legal issue before it." *Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024).

\*    \*    \*

We affirm the district court.

*So ordered.*

No. 23-5089
Oral Argument Not Scheduled

# United States Court of Appeals
*for the*
# D.C. Circuit

---

**Save Jobs USA**

*Appellant,*

*v.*

**Department of Homeland Security**, *et. al.*

*Appellees.*

---

On appeal from an order entered in the
United States District Court for the District of Columbia,
1:15-cv-615
The Hon. Tanya S. Chutkan

**Opening Brief**

John M. Miano
Christopher Hajec
IMMIGRATION REFORM LAW
INSTITUTE
20 Massachusetts Ave., NW
Washington DC 2002
(202) 232-5590

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

1. Plaintiff-Appellant is Save Jobs USA.

2. Defendant-Appellee is the U.S. Department of Homeland Security

3. Intervenor-Appellees are Anujkumar Dhamija and Immigration Voice.

4. *Amici curiae* are Accenture, Adobe Inc., Amazon.com, Inc., Apple Inc., Argo AI LLC, BSA | The Software Alliance, Business Roundtable, CGI Inc., Chamber of Commerce of the United States of America, Cisco Systems, Inc., Citrix Systems, Inc., CollectiveHealth, Inc., Compete America Coalition, Consumer Technology Association, Cummins Inc., eBay Inc., Electronic Arts Inc., FWD.us, Google LLC, Hewlett Packard Enterprise, Howard Hughes Medical Institute, HP Inc., IBM Corporation, Information Technology Industry Council (ITI), Intel Corporation, Lenovo (United States) Inc., Microsoft Corporation, National Association of Manufacturers, Partnership for a New American Economy Action Fund, PayPal, Pinterest Inc., Reddit, Inc., salesforce.com, inc., SAP, Society for Human Resource Management (SHRM), Square, Inc., StubHub, Inc., TechNet, Twitter, Inc., Waymo LLC, and Worldwide ERC

## CORPORATE DISCLOSURE STATEMENT

Save Jobs USA has no shareholders.

## RELATED CASES

This Court has previously reviewed this case in *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504 (DC. Cir. 2019).

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ................. i

Corporate Disclosure Statement .................................................... i

Related Cases ................................................................................. ii

Table of Authorities ...................................................................... iv

Glossary ...................................................................................... viii

Jurisdictional Statement ............................................................ viii

Statement of the Issues ............................................................. viii

Statutes and Regulations ........................................................... viii

Statement of the Case ................................................................... 1

Summary of the Argument............................................................ 6

Standard of Review ....................................................................... 8

Argument ...................................................................................... 8

   I. The H-4 Rule violates the major question doctrine. ............. 8

   II. The district court's decision relies on a "reasonably related" standard that is not consistent with that of *Washtech.* ........................................................................ 10

   III. The H-4 Rule violates the delegation doctrine................. 14

   IV. *Washtech* is not applicable because it is inconsistent with prior precedent of this Court....................................... 16

Conclusion ................................................................................... 17

Certificate of Compliance with Rule 32(A) ............................... 18

Certificate of Service.................................................................. 19

# TABLE OF AUTHORITIES

Cases:

*Acree v. Republic of Iraq,*
   370 F.3d 41 (D.C. Cir. 2004) ................................................... 8

*Am. Bar Ass'n v. FTC,*
   430 F.3d 457 (D.C. Cir. 2005) .............................................. 16

*Am. Bioscience v. Thompson,*
   269 F.3d 1077 (D.C. Cir. 2001) ............................................. 8

*Chevron USA v Natural Resources Defense Council,*
   467 U.S. 837 (1984) ................................................... 5–6, 10

*Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612 (2018) ..................... 9

*FDA v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) ................................................................ 8

*J. W. Hampton, Jr., & Co. v. United States,*
   276 U.S. 394 (1928) ......................................................... 14–15

*Interstate Commerce Comm'n v. Goodrich Transit Co.,*
   224 U.S. 194 (1912) .............................................................. 15

*Loving v. IRS,* 742 F.3d 1013 (D.C. Cir. 2014) ...................... 16

*Loving v. United States,* 517 U.S. 748 (1996) ......................... 14

*Marshall Field & Co. v. Clark,* 143 U.S. 649 (1892) ............. 14

*Mich. Gambling Opposition v. Kempthorne,*
   525 F.3d 23 (D.C. Cir. 2008) ................................................ 16

*Mistretta v. United States,* 488 U.S. 361 (1989) .................... 14

*Mowrer v. United States DOT,*
   14 F.4th 723 (D.C. Cir 2021) ................................................ 14

*Save Jobs USA v. U.S. Dep't of Homeland Sec.,*
   210 F. Supp. 3d 1 (D.D.C. 2016) ........................................... 4

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
  942 F.3d 504 (D.C. Cir. 2019) ................................................. 4

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) ........................................ 16–17

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984).......................... 9

*TOMAC v. Norton*, 433 F.3d 852 (D.C. Cir. 2006)................. 14

*Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014) ........... 8

*Wash. All. of Tech Workers v. DHS*,
  50 F.4th 164 (D.C. Cir. 2022)................. 5, 7–8, 10–13, 15–17

\***West Virginia v. EPA**, 142 S. Ct. 2587 (2022) ................... 8, 10

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ........... 9

Statutes:

Pub. L. No. 91-225, 84 Stat. 116 (1970) ................................... 3

8 U.S.C. § 1101(a)(15) ............................................................ 1

  8 U.S.C. § 1101(a)(15)(A)(i) ............................................... 1

  8 U.S.C. § 1101(a)(15)(B) ...................................................... 12

  8 U.S.C. § 1101(a)(15)(E) ................................................. 3, 12

  8 U.S.C. § 1101(a)(15)(F).................................................. 3, 12

  8 U.S.C. § 1101(a)(15)(G) ................................................. 3, 12

  8 U.S.C. § 1101(a)(15)(H) ............................ 1, 3, 6, 12, 14, 15

  8 U.S.C. § 1101(a)(15)(H)(i)(b) ............................................ 2

  8 U.S.C. § 1101(a)(15)(H)(i)(b1) .......................................... 2

  8 U.S.C. § 1101(a)(15)(H)(i)(c)............................................. 2

  8 U.S.C. § 1101(a)(15)(H)(ii)(a) ........................................... 2

  8 U.S.C. § 1101(a)(15)(H)(ii)(b) .......................................... 2

8 U.S.C. § 1101(a)(15)(H)(iii) ................................................ 2

8 U.S.C. § 1101(a)(15)(I) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(J) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(K) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(L) ................................................ 1,3, 12

8 U.S.C. § 1101(a)(15)(M) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(O) ................................................ 1,3, 12

8 U.S.C. § 1101(a)(15)(P) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(Q) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(R) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(S) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(T) ................................................ 3, 12

8 U.S.C. § 1101(a)(15)(U) ................................................ 3, 12

8 U.S.C. § 1157 ................................................ 1

8 U.S.C. § 1182(m) ................................................ 1

8 U.S.C. § 1182(n) ................................................ 1, 12

8 U.S.C. § 1182(t) ................................................ 1

8 U.S.C. § 1184(a) ................................................ 15

8 U.S.C. § 1184(c)(2)(E) ................................................ 3

8 U.S.C. § 1184(e)(2) ................................................ 3

8 U.S.C. § 1184(g)(9) ................................................ 2

8 U.S.C. § 1188 ................................................ 2

Regulations:

Employment Authorization for Certain H–4
   Dependent Spouses,
   80 Fed. Reg. 10,284 (Feb. 24, 2015)............. 3–4, 6–10, 13–15

8 C.F.R. § 214.1(a)(2) ................................................................. 1

8 C.F.R. § 214.2(f)(10)(ii)(A) ................................................... 11

Other Authorities:

S. Rep. 82-1137 (1952) ............................................................ 9

H.R Rep. 81-1365 (1952) ......................................................... 9

## GLOSSARY

DHS        Department of Homeland Security

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2); because it is a federal question under 28 U.S.C. § 1331; and because the defendant is the United States, 28 U.S.C. § 1346.

This court has jurisdiction over appeals from final decisions of a district court under 28 U.S.C. § 1291.

The final order appealed was filed on March 28, 2023. The notice of appeal was filed on April 25, 2023.

## STATEMENT OF THE ISSUES

1. Do regulations authorizing employment on H-4 visas without a directive from Congress violate the major question doctrine?
2. Is unrestricted employment reasonably related to a nonimmigrant visa that allows entry to accompany or join a nonimmigrant guestworker whose employment is conditioned on protections for American workers?

## STATUTES AND REGULATIONS

Statutes and regulations are reproduced in the appendix.

## STATEMENT OF THE CASE

The ultimate question in this case is whether the Department of Homeland Security ("DHS") has the authority to permit H-4 visa holders to work through regulation with no restrictions when the statutory terms of the H-4 visa do not authorize work.

Aliens are admitted into the United States as *immigrants*, *non-immigrants*, or *refugees*. 8 U.S.C. §§ 1101(a)(15) and 1157. Section 1101(a)(15) authorizes DHS to admit non-immigrants in various categories (for example, diplomats, crewmen, visitors, and journalists). The common name associated with a non-immigrant visa category is derived from its subsection within § 1101(a)(15). 8 C.F.R. § 214.1(a)(2). For example, the A-1 visa for diplomats is authorized by 8 U.S.C. § 1101(a)(15)(A)(i). There are several visa categories for admitting non-immigrants to perform labor. For example, the L-1 visa allows companies to transfer foreign managers to the United States, § 1101(a)(15)(L), and the O visa is for highly skilled workers of extraordinary ability, § 1101(a)(15)(O).

8 U.S.C. § 1101(a)(15)(H) authorizes the most important guest-worker programs (that is, H-1B, H-1B1, H-1C, H-2A, and H-2B) and defines the terms under which they may be used to perform

1

labor in the United States. The H-1B category authorizes an alien to "perform services" in a "specialty occupation" or as a "fashion model [] of distinguished merit and ability," but requires a labor condition application (requirements defined at § 1182(n)). § 1101(a)(15)(H)(i)(b). H-1B1 (governing treaty visas) authorizes admission to an alien in a "specialty occupation" but requires the employer to file an attestation related to wage and working conditions (requirements at § 1182(t)). § 1101(a)(15)(H)(i)(b1). H-1C authorizes admission for aliens to "perform services as a registered nurse" and requires the employer to file an attestation" to t'he wages and working conditions (requirements at § 1182(m)). § 1101(a)(15)(H)(i)(c). H-2A authorizes admission for aliens to perform "agricultural labor or services" (with labor certification requirements at § 1188). § 1101(a)(15)(H)(ii)(a). H-2B authorizes admission to "perform other temporary service or labor . . . if unemployed persons capable of performing such service or labor cannot be found in this country" (with a labor certification required under § 1184(g)(9)). § 1101(a)(15)(H)(ii)(b). The same section also authorizes DHS to approve H-3 visas to aliens for a "training program that is not designed primarily to provide productive employment." § 1101(a)(15)(H)(iii).

Several nonimmigrant visas permit dependents to follow or join the principal alien in the United States. 8 U.S.C. §§ 1101(a)(15)(E)–(M), (O)–(U). Congress has authorized employment for spouses in the E and L categories. 8 U.S.C. §§ 1184(c)(2)(E), (e)(2).

The H-4 visa category for dependents was created by Pub. L. No. 91-225, 84 Stat. 116 (1970), and is defined in an unnumbered clause at the end of § 1101(a)(15)(H) (reproduced at App. [16]). That clause, authorizing the admission of H-4 dependents as non-immigrants, reads in its entirety: "and the alien spouse and minor children of any such alien specified in this paragraph if accompanying him or following to join him." The H-4 visa is available to the dependents of H-1B, H-1B1, H-2A, H-2B, and H-3 visa holders defined in the same paragraph. *Id.* For nearly 45 years, the executive interpreted the H-4 visa as not permitting employment.

On February 25, 2015, DHS promulgated the regulations at issue here. Employment Authorization for Certain H–4 Dependent Spouses, 80 Fed. Reg. 10,284 (Feb. 24, 2015) ("H-4 Rule") (reproduced at App. [17]). The Rule grants certain H-4 visa holders work authorization through regulation. Specifically, it authorizes

3

aliens to work who are the spouses of principal beneficiaries of an approved Form I-140, Immigrant Petition for Alien Worker, or of aliens who been granted H-1B status under sections 106(a) and (b) of the American Competitiveness in the Twenty-first Century Act of 2000. 80 Fed. Reg. at 10,307.

Appellant, Save Jobs USA, is an unincorporated group of American workers who were employed in computer-related occupations at Southern California Edison until 2015 when they were replaced by foreign workers on H-1B visas employed by the Indian multinational conglomerate Tata. *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504, 510 (D.C. Cir. 2019). Save Jobs USA brought its challenge to the H-4 Rule on April 23, 2015. Compl. Docket 1. Save Jobs USA alleged the H-4 Rule exceeded DHS authority and that the H-4 Rule was arbitrary and capricious. *Id*. at ¶¶ 63–78; *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, No. 15-cv-0615 slip op. at 5[5] (D.D.C. Mar. 28, 2023).

On summary judgment, the district court held Save Jobs USA lacked standing. *Save Jobs USA v. United States Dep't of Homeland Sec.*, 210 F. Supp. 3d 1, 7–11 (D.D.C. 2016). Save Jobs USA appealed the district court's decision to this Court. *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir.

2019). This Court held Save Jobs USA suffered competitive injury from the H-4 Rule and reversed the district court decision. *Id*. at 508–12.

While a second motion for summary judgment was pending, this Court released its decision in *Wash. All. of Tech Workers v. DHS*, which greatly expanded DHS's power over non-immigrants visas and alien employment in the U.S. 50 F.4th 164 (D.C. Cir. 2022) (cert. denied 217 L. Ed. 2d 14) ("*Washtech*"). In *Washtech*, this Court announced that the statutory terms defining nonimmigrant visas are merely entry requirements that DHS is free to disregard once an alien enters the United States. *Id*. at 169–70. This Court also announced that DHS may permit alien employment that is reasonably related to an alien's visa on any nonimmigrant visa. *Id*. at 169. Both of these holdings were made outside of the framework established in *Chevron USA v Natural Resources Defense Council*, 467 U.S. 837 (1984). *Washtech*, 50 F.4th at 167–92. This court then held that employment directly related to a student's course of study was reasonably related to the purpose of the F-1 student visa. *Washtech*, 50 F.4th at 177–80.

The district court's summary judgment opinion is unpublished. *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, No. 15-cv-0615

slip op. (D.D.C. Mar. 28, 2023) (reproduced at App. [1]). The opinion states that, under the holdings of *Washtech*, the district court did not need to apply the *Chevron* framework to reach its decision. *Id*. at 8[8] n.2. The district court held that DHS demonstrated that unrestricted employment under the H-4 Rule was reasonably related to "'accompanying" or 'following to join' the holder of an H-1B visa in the United States" because DHS had "explain[ed] why it had decided to authorize employment for H-4 spouses." *Id*. at 13[13] (quoting 8 U.S.C. § 1101(a)(15)(H)). The district court held that it was within DHS's authority to permit unrestricted employment on H-4 visas through regulation.

## SUMMARY OF THE ARGUMENT

The major question doctrine prohibits the courts from conferring on DHS vast authority to create massive foreign labor programs without a clear grant of that authority from Congress. The H-4 Rule created a massive alien employment program by authorizing unrestricted work to H-4 accompanying spouses, and thus clearly qualifies as a major regulatory act, made pursuant to an even larger claim of authority to allow work to any nonimmigrants if that work is reasonably related to their visa category. Yet no one seriously contends that Congress *clearly* authorized

6

this program or conferred this authority. Thus, the major question doctrine bars the H-4 Rule.

The district court misapplied the *reasonably related standard* announced in *Washtech* by failing to consider the type of employment permitted by the rule. In *Washtech*, this court held that employment restricted to that which is directly related to an alien's course of study was reasonably related to the purpose of the F-1 student visas. The district court here held that unrestricted employment was reasonably related to accompanying or joining an H-1B guestworker in the United States. Under this approach, the "reasonably related" standard is meaningless, and DHS can permit any employment on any visa through regulation.

Under the delegation doctrine, in order for Congress to delegates power to an agency validly, it must lay down, in a legislative act, a discernible principle of action the agency is directed to conform to when exercising that power. It follows that an agency acts in excess of its validly delegated authority when it regulates without conforming to any principle of action laid down by Congress, as DHS did in the H-4 Rule. The H-4 visa terms are silent on work, providing no principle for the agency to conform to. Indeed, the only principle the court below held that DHS conformed

to in the H-4 Rule was the "reasonable relation" standard. Yet that standard was not laid down by Congress in a legislative act, but is wholly the creation of this Court in *Washtech*. Therefore, the H-4 Rule is in excess of agency authority.

## STANDARD OF REVIEW

The review of an agency record presents entirely questions of law. *Am. Bioscience v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001). This Court reviews questions of law *de novo*. *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004).

## ARGUMENT

### I. The H-4 Rule violates the major question doctrine.

Recently, the Supreme Court reaffirmed the *major question doctrine* and gave the principle that name in *West Virginia v. EPA*, 142 S. Ct. 2587, 2643 (2022). Under the major question doctrine, the courts expect Congress "to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 146 (2000)). Here there is no dispute that the H-4 Rule represents a decision of vast economic significance. In the H-4 Rule, DHS created a massive alien employment program

8

without a clear grant of authority by Congress. DHS estimated that the H-4 Rule would allow 179,600 aliens to enter the workforce the first year and 55,000 each subsequent year. 80 Fed. Reg. at 10,308. *Amici* asserted that that the H-4 Rule is "critical to the overall health of the economy." Brief of Leading Companies and Business Associations as *Amicus Curiae* in Support of Defendant, Docket 71-1 at 3. "[H-4 employment] accounts for $7.5 billion dollars (sic) of economic productivity annually." *Id.* at 9, 23.

The authorization of alien employment is a fundamental aspect of the Immigration and Nationality Act. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984) ("A primary purpose in restricting immigration is to preserve jobs for American workers."); S. Rep. 82-1137 (1952) at 11 & H.R Rep. 81-1365 (1952) at 50–51 (describing how the Immigration and Nationality Act has only three exceptions to the general requirement that alien workers be subject to protections for American workers). Programs of such massive scope as the H-4 rule clearly fall under the major question doctrine. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018) (Congress would not

have tucked into a catchall term an elephant that tramples the work done by other laws). The lack of a directive from Congress authorizing a massive employment program for H-4 visas is a clear violation of the major question doctrine. *See West Virginia*, 142 S. Ct. at 2605. Thus, the H-4 Rule is in excess of DHS authority under the major question doctrine.

The *Washtech* decision provides no guidance here because only the dissent addressed the major question doctrine. *Washtech*, 50 F.4th at 206 (Henderson, J., dissenting). The district court's decision also makes no mention of the major question doctrine. The district court's decision presents vast power flowing to an agency outside the *Chevron* framework unrestricted by the major question doctrine.

## II. The district court's decision relies on a "reasonably related" standard that is not consistent with that of *Washtech*.

In *Washtech*, this Court announced that DHS has "the power to authorize employment reasonably related to the nonimmigrant visa class" through regulation. 50 F.4th at 169. In applying this new reasonably related standard, this Court looked to the specific type of employment DHS regulations authorized. The Optional

Practical Training program at issue in *Washtech* "closely ties students' practical training to their course of study and their school." *Washtech*, 50 F.4th at 168. An alien "can only seek practical training via employment that is 'directly related to the student's major area of study.'" *Washtech*, 50 F.4th at 180 (quoting 8 C.F.R. § 214.2(f)(10)(ii)(A)). "At every stage [the Optional Practical Training Program is] confined to professional opportunities that enhance the value and practical effectiveness of the classroom study for which all F-1 nonimmigrants come in the first place." *Id*. "The [Optional Practical Training program] imposes strict requirements to ensure a 'direct relationship' between the F-1 student's practical training and his or her coursework." *Id*. at 190 (quoting 8 C.F.R. § 214.2(f)(10)(ii)(A)). Thus, in *Washtech*, "Authorizing foreign students to engage in limited periods of employment for practical training as their schools recommend according to the terms set out in the Rule is a valid exercise of that power [to permit employment on nonimmigrant visas]." 50 F.4th at 169.

The district court's opinion applied the *reasonably related* standard to employment in general rather than the type of employment authorized as in *Washtech*. *Save Jobs USA* at 13[13].

11

In stark contrast to *Washtech*, the district court's opinion held that *unrestricted employment* in general is reasonably related to the H-4 visa class. This creates the facial absurdity that the principal alien in H-1B status must work subject to protections for American workers, 8 U.S.C. § 1182(n), while an alien accompanying or joining the H-1B alien can work with no restrictions at all. Furthermore, the district court decision directly opens the door for DHS to allow employment on 12 additional visas using the same language where Congress has not authorized employment. 8 U.S.C. § 1101(a)(15)(F), (I)–(K), (M), (O)–(U).

The district court's interpretation of *reasonably related* leaves the standard meaningless because it allows any employment on any visa. For example, section 1101(a)(15)(B) defines the B (tourist) visa as:

> an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure;

Under *Washtech*, the restrictions against performing labor on a B visa are mere threshold entry criteria that DHS can disregard

once an alien enters the United States. 50 F.4th at 170. Furthermore, a regulation authorizing alien employment may directly conflict with the statutory visa terms but still be reasonably related to them. *Id*. at 187. If the *Washtech* standard is expanded such that unrestricted employment is *reasonably related* to "accompanying" or "following" the holder of an H-1B visa in the United States, it would follow that unrestricted employment is even more reasonably related to coming to the United States for business and that DHS is free to even to permit unrestricted alien employment on tourist visas through regulation. By excluding the type of employment from the *reasonably related* analysis, the district court's reasoning leaves no bounds on DHS's power to allow employment through regulation so that the agency can continue to nullify the protections for American workers in the immigration system. This is particularly so, when an agency explanation is sufficient to satisfy the standard:

> In any event, Defendant did explain why it had decided to authorize employment for H-4 spouses. In doing so, Defendant also demonstrated how the H-4 Rule "is reasonably related to the nature and purpose of the [H-4] visa class."

*Save Jobs USA* at 13[13].

13

## III. The H-4 Rule violates the delegation doctrine.

"In considering a challenge to a delegation of power, 'the test is whether Congress has set forth an intelligible principle to which the person or body authorized to act is directed to conform.'" *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 30 (D.C. Cir. 2008) (quoting *TOMAC v. Norton*, 433 F.3d 852, 861 (D.C. Cir. 2006)). In the H-4 Rule, DHS exceeded its authority by regulating on a basis of statutory silence. Under the delegation doctrine, a delegation of power to an agency is forbidden by the separation of powers unless Congress provides, by legislative enactment, some intelligible principle that the agency must conform to when exercising that power. *Mistretta v. United States*, 488 U.S. 361, 372 (1989); *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 408–09 (1928). "The intelligible-principle rule seeks to enforce the understanding that Congress . . . may delegate no more than the authority to make policies and rules that implement its statutes." *Loving v. United States*, 517 U.S. 748, 771 (1996) (citing *Marshall Field & Co. v. Clark*, 143 U.S. 649, 693–94 (1892)). Thus, agencies act in excess of valid statutory authority when they exercise a delegated power without implementing the terms of a statute.

14

The statutory definition of the H-4 visa does not state or imply anything about employment. 8 U.S.C. § 1101(a)(15)(H). Allowing employment does not parse, apply, or implement the statutory terms of the H-4 visa that allow an alien to *accompany* or *join* a guestworker in the United States. Neither does the H-4 Rule "implement" DHS's power under 8 U.S.C. § 1184(a) to set the conditions of nonimmigrants' admission. That provision provides no congressional "rule[] of action" to conform to or implement, but merely delegates the power to set these conditions according to some principle located elsewhere. *Interstate Commerce Comm'n v. Goodrich Transit Co.*, 224 U.S. 194, 214 (1912), quoted in *J. W. Hampton, Jr., & Co.*, 276 U.S. at 408. The only intelligible principle the court below identified was that employment be reasonably related to the H-4 visa class. *Save Jobs USA* at 11[11]. On this point, the court below erroneously asserted that this is a statutory requirement. *Id*. In reality, the reasonable relation standard is entirely an invention by this Court in *Washtech* and does not appear anywhere in the Immigration and Nationality Act. 50 F.4th at 169. The authority the district court found to authorize alien employment is entirely a judicial delegation of power to DHS, and not a congressional delegation of power.

15

## IV. *Washtech* is not applicable because it is inconsistent with prior precedent of this Court.

"[W]hen a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail." *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011); *Mowrer v. United States DOT*, 14 F.4th 723, 735 (D.C. Cir 2021). Both the major question doctrine and the delegation doctrine have been firmly established in the precedent of this circuit. *E.g., Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014); *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 469 (D.C. Cir. 2005); *Mich. Gambling Opposition v. Kempthorne*, 525 F.3d 23, 30 (D.C. Cir. 2008). The *Washtech* decision held that the Immigration and Nationality Act confers on DHS the vast power to permit alien employment through regulation through ancillary provisions that do not even mention employment. *Washtech*, 50 F.4th at 177–80. In fact, *Washtech* held that DHS was free to create the largest alien employment program in the immigration system through unguided regulation. *Id*. at 203 (Henderson, J., dissenting). *Washtech*'s conferral of vast power to permit alien employment to DHS *without conforming to any statutory principle, let alone a clear one,* directly conflicts with this

16

court's prior precedent and the Supreme Court precedent governing the delegation and major question doctrines. *See Washtech*, 50 F.4th at 206 (Henderson, J., dissenting) (applying the major question doctrine). Because the *Washtech* decision directly conflicts with prior precedent of this court and the U.S. Supreme Court, it cannot prevail here. *Cf. Sierra Club*, 648 F.3d at 854.

## CONCLUSION

For the reasons stated above, this Court should reverse the judgment of the district court.


Respectfully submitted, January 2, 2024


<span style="padding-left:3em"></span>/s/ John M. Miano<br>
<span style="padding-left:3em"></span>D.C. Bar No. 1003068<br>
<span style="padding-left:3em"></span>Christopher Hajec<br>
<span style="padding-left:3em"></span>D.C. Bar No. 492551<br>
<span style="padding-left:3em"></span>Immigration Reform Law Institute<br>
<span style="padding-left:3em"></span>25 Massachusetts Ave., N.W.<br>
<span style="padding-left:3em"></span>Suite 335<br>
<span style="padding-left:3em"></span>Washington, D.C. 20001<br>
<span style="padding-left:3em"></span>(202) 232-5590<br>
<span style="padding-left:3em"></span>miano@colosseumbuilders.com

17

## CERTIFICATE OF COMPLIANCE WITH
## RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because that brief contains 17 pages, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(f). That brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because that brief was prepared in a proportionally spaced typeface using Microsoft Word for Mac 2021 using 14 pt. Century Schoolbook.

/s/ John M. Miano
D.C. Bar No. 1003068
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590
jmiano@verizon.net

## CERTIFICATE OF SERVICE

I certify that on January 2, 2024, I filed the attached Opening Brief and Appendix with the ECF system that will provide notice and copies to all parties.

<u>/s/ John M. Miano</u>
D.C. Bar No. 1003068
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590
jmiano@verizon.net